Order Filed on
8/25/2010
by Clerk U.S. Bankruptcy
Court District of New Jersey

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------X

In Re:

DORON GRATCH,

                                Debtor.

-------------------------------------------------------X

STACEY L. MEISEL, TRUSTEE,

                                Plaintiff,

- against-

DORON GRATCH, GISELE GRATCH,
OAK TRAIL REALTY LLC, SCOTT D.
HELLER, LAWRENCE LEIN and JUDITH
LEV,

                                Defendants.

-------------------------------------------------------X

SHARAD WAGLE,

                                Plaintiff,

- against-

DORON GRATCH,

                                Defendant.

-------------------------------------------------------X

CHAPTER 7

Case No.: 05-47559 (RG)

Ad. Pro. No. 07-1785 (MBK)

Ad. Pro. No. 07-2029 (MBK)

**OPINION**

APPEARANCES:

Erin J. Kennedy, Esq.
Forman Holt Eliades & Ravin LLC
80 Route 4 East, Suite 290
Paramus, New Jersey 07652
Attorneys for Plaintiff Stacey L. Meisel

Howard B. Leopold, Esq.
Two University Plaza
Hackensack, NJ 07601
Attorney for Plaintiff Sharad Wagle

Doron Gratch
41 Sunset Road
Demarest, NJ 07627
Defendant Pro Se

**MICHAEL B. KAPLAN, U.S.B.J.**

I.  **JURISDICTION**

This matter arises from two adversary proceedings initiated separately by the Chapter 7 Trustee, Stacey Meisel, and a creditor, Sharad Wagle, seeking revocation of the Debtor's discharge pursuant to 11 U.S.C. §§ 727(d)(1) and 727(d)(2).[1]  The Court has jurisdiction over this contested matter under 28 U.S.C. § 1334(a) and 157(b) and the Standing Order of the United States District Court, dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).  Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).  The statutory predicate for the relief sought herein is 11 U.S.C. §§ 727(a)(2), 727(d)(1) and 727(d)(2).

II.  **APPLICABLE STANDARDS**

Courts generally have recognized the importance of the discharge to the debtor and, accordingly, have construed the provisions of § 727 liberally in favor of debtors.  Because denial of discharge is an extreme penalty, the provisions of § 727 are "strictly construed against creditors and liberally construed in favor of debtors."  Ins. Co. of N. Am. v. Cohn (In re Cohn),

---

[1] The Trustee and Sharad Wagle each brought separate adversary proceedings seeking revocation of the Debtor's discharge predicated upon the Debtor's alleged pre-petition transfers of assets and post-petition retention of estate property. Inasmuch as both cases rely on the same facts and request the same relief, this Court determined previously that the interests of judicial economy, as well as the convenience of the parties and the witnesses, warranted that both matters be consolidated and tried as a single proceeding.

54 F.3d 1108, 1113 (3d Cir. 1995). The plaintiff has the burden of proof in an adversary proceeding objecting to discharge. Fed. R. Bankr.P. 4005.[2] The standard of proof is the preponderance of the evidence. In re Cohn, 54 F.3d at 1114. "Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden thereafter shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case. The plaintiff, however, always bears the ultimate burden of proving, by a preponderance of the evidence, the essential elements of an alleged objection to discharge." PaineWebber, Inc. v. Gollomp ( In re Gollomp), 198 B.R. 433, 440 (S.D.N.Y. 1996).

### III. FINDINGS OF FACT

The following constitutes the Court's findings of fact and conclusions of law as required by Fed.R. Bankr. P. 7052.[3]

1. On October 12, 2005 (the "Petition Date"), Doron Gratch (the "Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*.

2. On October 18, 2005, the United States Trustee appointed Stacey Meisel (the "Trustee") to serve as the Chapter 7 Trustee for the Debtor's estate.

3. The Debtor was granted a discharge on February 8, 2007.

4. Gisele Gratch ("Gisele") is the Debtor's spouse. They are in the midst presently of a divorce proceeding.

5. Ehud Gratch ("Ehud") is the Debtor's brother.

---

[2] Fed. R. Bankr.P. 4005, "Burden of Proof in Objecting to Discharge," states: "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." While the instant proceeding seeks revocation of the discharge pursuant to § 727(d), the burden of proof remains the same.

[3] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

*Approved by Judge Michael Kaplan August 25, 2010*

6.  Sharad Wagle is a judgment creditor of Debtor by virtue of a judgment entered on February 19, 2004, in the amount of $49,207.02, and a second judgment entered on June 8, 2004, in the amount of $1,212.50, in a case filed in the Superior Court of New Jersey, Bergen County, Law Division bearing Docket No. BER-L-9577-02, entitled <u>Sharad Wagle v. Silver Star Int'l Trading Corp., Doron Gratch and John Does, 1 through 5</u>. In or about December of 2004, the Bergen County Sheriff inventoried the contents of the Debtor's Demarest, New Jersey residence in connection with the Wagle judgment pending against the Debtor.

7.  Prior to the Sheriff's inventory, the Debtor removed certain valuable assets, including, but not limited to artwork, sculpture, china and crystal ("Valuable Assets"), which were acquired after the Debtor and Gisele were married. The Debtor and Gisele were married in 1988 and the Valuable Assets had been acquired with their joint funds and maintained in their Demarest, New Jersey home.

8.  The Debtor gave at least five paintings ("Artwork") to Ehud to hold for him prior to the Sheriff's office conducting an inventory of the contents of the Demarest Property.

9.  The Debtor failed to list his interest in the Artwork on his schedules or in his statement of financial affairs.

10. The Debtor did not disclose to the Trustee his ownership of the Artwork or his transfer of the paintings to Ehud.

11. In October 2007, certain of the Artwork consisting of a Tarkai oil painting, a Tarkai serigraph, a Tarkai watercolor, a Shor oil painting, and a Yosl Bergner oil painting were delivered to B.L.D. Fine Art Gallery, Ltd., 492-B Cedar Lane, Teaneck, New Jersey (the "Gallery") to be sold on consignment pursuant to a consignment agreement dated October 1, 2007.

*Approved by Judge Michael Kaplan August 25, 2010*

12.   The Yosl Bergner oil painting was sold by the Gallery on approximately October 28, 2007, for $2,200. Prior to the sale, the owner of the Gallery, Jehuda Levin, was advised by Ehud that the price to be received under the proposed sale had to be approved by the Debtor as the latter was the owner of the painting.

13.   On October 28, 2007, the Gallery, at the direction of Ehud, wrote a check to the Debtor for $2,200 (the "Check"), which was the sales price for the Yosl Berger oil painting, net of the Gallery's commission.

14.   The Check was delivered to the Debtor by the Gallery owner, Jehuda Levin.

15.   Debtor did not deliver the Check to the Trustee or advise the Trustee that either he had sold the painting or had received the Check.

16.   The Trustee did not know or have reason to know of the Debtor's interest in or transfer of the Artwork until after the issuance of the Debtor's discharge. The Trustee was provided this information by Gisele in an email to the Trustee's counsel, dated November 8, 2007.

17.   By consent order dated November 28, 2007, Ehud acknowledges that the certain pieces of Valuable Assets turned over to the Trustee and Artwork held on consignment by the Gallery "are not property of Ehud Gratch and were delivered to Ehud Gratch by Doron Gratch to be held by Ehud Gratch for the benefit of Doron Gratch . . . ."

18.   Ehud is not a creditor listed in the Debtor's Schedules and has not filed a proof of claim in the underlying Chapter 7 bankruptcy case.

### IV.   ARGUMENTS

The Trustee and Plaintiff Sharad Wagle ("Wagle") assert that revocation is warranted pursuant to § 727(d)(1) and § 727(d)(2) because Debtor's discharge was obtained through the Debtor's fraud in failing to disclose the transfer of certain pieces of artwork to his brother and the

5

post-petition retention of proceeds from the sale of one painting placed on consignment. The Trustee further asserts that revocation is warranted because the Debtor received post-petition payments, which he knowingly and fraudulently failed to disclose to the Trustee.

In response to the Trustee's contentions, the Debtor acknowledges the transfer of the Artwork, but submits that the transfers reflected a repayment of indebtedness owing to his brother, Ehud. In this regard, the Debtor asserts that over a period of several years, his brother had loaned the Debtor substantial sums, approximating $180,000, for food, health insurance, car payments and other living expenses. Consequently, the Debtor contends that the Artwork did not belong to him as of the bankruptcy filing and, therefore, was not property of the bankruptcy estate. Moreover, the $2,200 check received by the Debtor from the sale of the Yosl Bergner painting represented simply a new loan by Ehud.

## V.    DISCUSSION

Revocation of discharge is an extraordinary remedy which is available only in limited circumstances. Nese v. Lokay (In re Lokay), 269 B.R. 132, 138 (Bankr. W.D. Pa. 2001); In re Jordan, 521 F.3d 430, 433 (4th Cir. 2008). The §727(d) revocation provisions "must be construed liberally in favor of the debtor and against the party seeking revocation." Id. (citing In re Adeeb, 787 F.2d 1339, 1342 (9th Cir. 1986). The plaintiff has the burden of proving the objection to discharge by a preponderance of the evidence. See Fed. R. Bankr.P. 4005; In re Cohn, 54 F.3d 1114. "Once the movant produces enough evidence to sustain this burden, the burden then shifts to the defendant to explain his or her actions." In re Rodwell, 280 B.R. 100, 102 (Bankr. D.N.J. 2002). The plaintiff, however, always bears the ultimate burden of proving "the essential elements of an alleged objection to discharge." Adams v. Zembko (In re Zembko), 367 B.R. 253, 256 (Bankr. D. Conn. 2007) (quoting PaineWebber, Inc. v. Gollomp (In re

*Approved by Judge Michael Kaplan August 25, 2010*

Gollomp), 198 B.R. 433, 440 (S.D.N.Y. 1996)). "However, while the law generally favors discharges in bankruptcy, the Code should be construed to protect the debtor only in those cases where there is no intent to violate its provisions." United Bank of Denver Nat'l Ass'n v. Greenwalt (In re Greenwalt), 48 B.R. 804, 805(D.Colo.1985) (citations omitted). A discharge is reserved for "the honest but unfortunate debtor" and is predicated on full and accurate disclosure of all material facts. See Grogan v. Garner, 498 U.S. 279, 286-87 (1991); Wachovia Bank, N.A. v. Spitko (In re Spitko), 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006). With these standards in mind, the Court turns to analysis of the Trustee's first claim, that the Debtor's discharge should be revoked pursuant to 11U.S.C. § 727(d)(1).

**I. Section 727(d)(1)**

"Section 727(d)(1) requires that (1) the debtor obtained a discharge through fraud, and (2) the movant did not know of the fraud pre-discharge."[4] Additionally, a request to revoke a debtor's discharge under § 727(d)(1) must be made within one year of the granting of the discharge, while a request to revoke a debtor's discharge under § 727(d)(2) must be made either within one year of the granting of the discharge, or before the case is closed. See 11 U.S.C. 727(e).[5] As regards the first element of § 727(d)(1), the Trustee "must prove that the debtor committed fraud in fact which would have barred the debtor's discharge had it been discovered before discharge was granted." Walsh v. Helsel (In re Helsel), 326 B.R. 591, 598 (Bankr. W.D.

---

[4] Section 727(d) provides, in relevant part:
(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge . . . if—
(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
 (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee . . . .

[5] Both the Trustee and Sharad Wagle commenced separate adversary proceedings within one year after the Debtor received his discharge and prior to closure of the case.

7

Pa. 2005) (citing Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176, 180 (10th Cir. 1991)). "[B]ecause courts recognize that a debtor will be reluctant to admit that he was motivated by fraud, they have permitted fraudulent intent to be inferred from circumstantial evidence or a course of conduct." In re Spitko, 357 B.R. at 301; Neary v. Darby (In re Darby), 376 B.R. 534 (Bankr. E.D. Tex. 2007) ("[T]he existence of a fraudulent intent is most often betrayed by an examination of a course of conduct."). To determine whether the debtor acted with actual fraudulent intent in transferring away or concealing a valuable asset prior to his voluntary bankruptcy filing, the court looks to the Debtor's conduct and circumstances recognized by the Second Circuit as "badges of fraud," including: (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry. In re Zembko, 367 B.R. at 257.

Here, the evidence is clear. The Debtor transferred the Artwork to his brother prior to the bankruptcy filing, at a time when Wagle was seeking to enforce his judgment. The contention that the transfer of the Artwork was a partial repayment of the Debtor's indebtedness to his brother, and thus the Debtor held no interest therein, is belied by the proofs submitted at trial: (1) Ehud was not listed as a creditor in the Debtor's bankruptcy schedules (the Debtor's assertion that his bankruptcy counsel had advised him to omit Ehud is simply preposterous); (2) the absence at trial of any records of any kind evidencing any obligations owing Ehud by the Debtor,

8

*Approved by Judge Michael Kaplan August 25, 2010*

including, for example, accountings, promissory notes, repayment schedules, cancelled checks or comparable documents; (3) Ehud has acknowledged in a consent order dated November 28, 2007 that he was holding the Artwork for the Debtor's benefit; (4) the highly credible testimony of the Gallery owner, Jehuda Levin, indicating he had been advised by Ehud that the price to be received under the proposed sale of the Yosl Bergner oil painting needed to be approved by the Debtor, as the latter was the owner of the painting; (5) the Debtor's admission that Ehud had previously attempted to satisfy a debt owing by the Debtor to Israel Kaller by offering the Artwork (or a portion thereof); and (6) the fact that the Gallery was instructed by Ehud to make the check payable to the Debtor.  In sum, the lack of consideration received by the Debtor, the fact that the transfer of the Artwork was to a family member at a time when the Debtor was being pursued on a judgment, the failure to disclose the transfer in the Debtor's schedules, the history of the Debtor's steps to thwart collection efforts by the judgment creditor, and the post-discharge timing of the consignment of the Artwork all point to an intent to hinder, delay and/or defraud creditors.

Based on the presence of multiple badges of fraud, the Court infers that the Debtor acted with actual fraudulent intent. See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.), 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005) (citation omitted) (holding that the presence of several badges of fraud can constitute clear and convincing evidence of actual fraudulent intent). Timely knowledge of the Debtor's conduct would have provided grounds to deny the Debtor a discharge. See Scribner v. Bosket (In re Bosket), 369 B.R. 106, 110-11 (Bankr. W.D.N.Y. 2007); 11 U.S.C. § 727(a).[6]  As regards the second element of § 727(d)(1), the Trustee must establish

---

[6] Section 727(a) provides, in relevant part:
The court shall grant the debtor a discharge, unless—
. . .

9

*Approved by Judge Michael Kaplan August 25, 2010*

that he neither knew, nor had reason to know, of the fraud prior to the granting of Debtor's discharge.

> [I]n a revocation action under § 727(d)(1), the plaintiff must show due diligence in investigating and responding to possible fraudulent conduct once he or she is aware of it or in possession of facts such that a reasonable person in his or her position should have been aware of a possible fraud. . . . This is not to say that a trustee is required to suspect that every debtor is committing fraud in his schedules. As a general rule, the trustee is entitled to rely on the truthfulness and accuracy of the debtor's schedules and is not required to assume that the debtor is lying. However, once the trustee is in possession of facts that would put a reasonable person on notice of a possible fraud, he has a duty to diligently investigate to determine if grounds exist for the denial of the Debtor's discharge and if so to timely file a complaint.

In re Darby, 376 B.R. at 542-43 (quoting Anderson v. Vereen (In re Vereen), 219 B.R. 691, 696 (Bankr. D.S.C. 1997)). Put differently, if the plaintiff fails to act on information received prior to discharge, he cannot later seek a revocation of that discharge. Keeffe v. Natalie, 337 B.R. 11, 14 (N.D.N.Y 2006), aff'd 2007 U.S. App. LEXIS 8704 (2d Cir. Apr. 11, 2007). Concerning actual knowledge, the Court finds that the Trustee and Wagle were unaware of the transfer of the Artwork and the placement of the painting on consignment until after the granting of Debtor's discharge. The Debtor does not offer any evidence, testimonial or documentary, which would suggest otherwise. Moreover, Debtor has not argued nor taken the position that the Trustee or

---

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, . . . or concealed, or has permitted to be transferred, removed, . . . or concealed--
(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition;
(3) the debtor has concealed . . . any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
(4) the debtor knowingly and fraudulently, in or in connection with the case--
(A) made a false oath or account;
(B) presented or used a false claim;
(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs . . . .

*Approved by Judge Michael Kaplan August 25, 2010*

Wagle should have discovered the transfer pre-discharge. In sum, the Trustee has presented sufficient evidence to support revocation of the Debtor's discharge pursuant to § 727(d)(1). The court turns to analysis of Trustee's second claim, that the Debtor's discharge should be revoked pursuant to 11 U.S.C. § 727(d)(2).

**II. Section 727(d)(2)**

Section 727(d)(2) provides that the court shall revoke a discharge if "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee . . . ." While § 727(d)(1) requires a creditor to prove that he was unaware of the fraud prior to discharge, this requirement is conspicuously absent from § 727(d)(2).

It is apparent that the Debtor violated § 727(d)(2) in several ways. The elements of the Trustee's claim may be divided into four parts: (1) that the Debtor acquired or became entitled to acquire certain property [the $2,200 proceeds from the sale of the Yosl Bergner oil painting]; (2) the property in question was property of the bankruptcy estate (or would be upon its acquisition) [a fact acknowledged by Ehud in the November 28, 2007 Consent Order]; (3) the Debtor failed to report the acquisition of or entitlement to such property or to deliver or surrender such property to the Trustee; and (4) in so failing to report or deliver or surrender the property, the Debtor acted knowingly and fraudulently. Grossman v. Foster (In re Foster), 343 B.R.385, 393 (Bankr. D.Mass. 2006). It is undisputed that the Debtor received post-petition the sum of $2,200, representing the proceeds from the sale of the Yosl Bergner oil painting. Under the Code's broad definition, such proceeds are "property of the estate." See Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield (In re Mid-Island Hosp., Inc.), 276 F.3d 123, 128 (2d Cir.

11

2002); 11 U.S.C. §§ 541(a), 548. Even though the Debtor received post-petition payments, he failed to report his entitlement to and acquisition of the payments, and he failed to deliver or surrender the payments to the Trustee. Accordingly, the Trustee and Wagle have proven the first three elements of his claim. The Trustee and Wagle must also prove the fourth element, that in so failing to report and deliver or surrender the payments to the Trustee, the Debtor acted both "knowingly and fraudulently." The Debtor acted knowingly because he knew that the post-petition payments belonged to the estate and that he was obligated to report or surrender them to the Trustee. The Debtor acted fraudulently because his conduct, in failing to report or turnover the post-petition payments to the Trustee, evinces his intent to defraud the estate. The Trustee has presented sufficient evidence to establish a prima facie case under § 727(d)(2). Therefore, the burden of production shifts to the Debtor to rebut the inference of fraudulent intent.

For the reasons expressed above, the Court finds the testimony of the Debtor and his brother, with respect to the Debtor's intentions in transferring the Artwork, lacking in credibility and unsupported by any other evidence. The Debtor's effort to minimize the scope of the fraud by emphasizing the *deminimis* value of the Artwork is likewise unavailing. Where property truly has little or no value, there is simply no reason not to list the assets; failure to so disclose can only expose a debtor to possible denial or revocation of discharge and, because the assets have only minimal value, there can be little benefit to the debtor. Indeed, listing worthless property, on the other hand, will likely result in the trustee's abandoning the property back to the debtor at the close of the case. In re Foster, 343 B.R. at 392. For the reasons outlined above, the Trustee and Wagle have established that the Debtor knowingly and fraudulently failed to report or turnover his post-petition receipt of the $2,200 sale proceeds. A discharge is reserved for an honest but unfortunate debtor. In re Spitko, 357 B.R. at 298. To obtain a discharge, a debtor

*Approved by Judge Michael Kaplan August 25, 2010*

must fully and accurately disclose all material facts. See <u>Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Bernard (In re Bernard)</u>, 99 B.R. 563, 570 (Bankr. S.D.N.Y. 1989).  On the basis of all of the evidence presented, the Court concludes that the Trustee has satisfied her burden of proving, by a preponderance of the evidence, that the Debtor's discharge should be revoked pursuant to § 727(d)(2).

*Approved by Judge Michael Kaplan August 25, 2010*

## VI. CONCLUSION

Based upon the foregoing, the Debtor's discharge should be and is hereby revoked. It is so ORDERED. Counsel for the Trustee shall submit the appropriate form of judgment.

Dated: August 25, 2010

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge

*Approved by Judge Michael Kaplan August 25, 2010*